IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


KATHRYN RECKLEY,                          :

    Plaintiff,                            :
                                  Case No. 3:05cv249

        vs.                               :
                                  JUDGE WALTER HERBERT RICE

CITY OF SPRINGFIELD, OHIO,                :
*et al.*,
                                  :

    Defendants.


---

DECISION AND ENTRY SUSTAINING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT (DOC. #38); AFFIRMING MAGISTRATE
JUDGE'S DECISION AND ORDER (DOC. #59) AND OVERRULING
PLAINTIFF'S OBJECTIONS THERETO (DOC. #61); JUDGMENT TO
ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF;
TERMINATION ENTRY

---

Plaintiff Kathryn Reckley has set forth, *inter alia*, claims of sexual

harassment in violation of federal and state law, arising out of her employment at,

and termination from, the City of Springfield Prosecutor's office, where she worked

as an Assistant Prosecutor. Doc. #6. Reckley brings her claims against the City of

Springfield, as well as the following individual Defendants, in both their individual

and official capacities: Michael Sheils (Springfield's Chief Prosecutor), Robert

DeBell (Springfield's Law Director) and Matthew Kridler (Springfield's City

Manager). Id. ¶¶ 3-5.

In her Amended Complaint, Reckley asserts four separate claims for relief, to

wit: (1) violation of her First Amendment rights, pursuant to 42 U.S.C. § 1983, against Sheils, DeBell and Kridler (Count 1);[1] (2) sexually hostile work environment, in violation of Title VII and Ohio Revised Code § 4112.02(A), against all Defendants (Count 2); (3) retaliation, in violation of Title VII and Ohio Revised Code § 4112.02(I), against all Defendants (Count 3); and (4) intentional infliction of emotional distress, against Sheils, DeBell and Kridler (Count 4). Id. The Defendants move for summary judgment on all claims. Doc. #38.[2]

A discovery dispute arose between the parties wherein the Defendants argued that certain deposition and email communications sought to be discovered by the Plaintiff (Doc. #58) were protected by an attorney-client privilege.[3] This

---

[1]Count 1 of the Plaintiff's Complaint alleges a violation of "42 U.S.C. [§] 1983 and the First and Fourteenth Amendment . . . by subjecting plaintiff to a sexually hostile work environment and retaliating against plaintiff for opposing a sexually hostile work environment and participating in the investigation of the hostile work environment." Doc. #6 ¶ 16. Plaintiff clarifies this claim in her Memorandum in Opposition in stating that "her claim under 42 U.S.C. [§] 1983 does not rest exclusively on discrimination or retaliation. It also rests on the First Amendment." Doc. #55 at 16. Because the Plaintiff has not pointed to any facts to support a separate claim under the Fourteenth Amendment, as argued by the Defendants (Doc. #38 at 22), the Court will proceed on the assumption that the Plaintiff is not pursuing a claim thereunder.

[2]The Defendants previously moved for summary judgment (Doc. #18), but the Court overruled such motion (Doc. #27), without prejudice to renewal, with an instruction that the Defendants file any new motion with proper evidentiary support, as provided in Federal Rule of Civil Procedure 56.

[3]Magistrate Judge Merz conducted a telephone conference with counsel, on December 12, 2008, with regard to the discovery dispute mentioned above. See Min. Entry, dtd. Dec. 12, 2008. In the course of that conference, counsel indicated that there were additional items of communication about which the parties were disputing the admissibility. The Magistrate Judge instructed the

2

Court referred the issue to United States Magistrate Judge Merz for resolution.

Doc. #37.  The Magistrate Judge determined that all referenced communications

were protected by the attorney-client privilege and, thus, were not discoverable.

Doc. #59.  A review of this Decision is now before the Court, the Plaintiff having

objected to the same. Doc. #61.

The Court will begin its analysis with an overview of the facts, followed by a

review of the Magistrate Judge's Decision pertaining to the discovery dispute.  It

will then turn to a consideration of the merits of the Defendants' Motion for

Summary Judgment.

I.    Facts[4]

The City of Springfield employed Reckley as an Assistant Prosecutor from

May 1991 until her termination, in July 2004. Doc. #21, Attach. #1 (Reckley Dec.)

---

Defendants to file a Rule 26 Motion for Protective Order, attaching the same, for
the Court's consideration.  Three months later, counsel sent the Magistrate two
stacks of emails (one redacted and the other not), yet did not attach the same to a
Motion for a Protective Order, as instructed.  Because the parties ignored the
instructions of the Magistrate Judge, with regard to the format of the submission
of these materials, the Court is neither ruling on the admissibility of the same nor
considering any of the challenged materials when ruling herein, to the extent they
are relied on by the parties in their briefings.

[4]Since this case comes before the Court on the Defendants' Motion for
Summary Judgment, the Court sets forth the facts and circumstances giving rise to
such Motion in the manner most favorable to the Plaintiff, as the party against
whom the Motion is directed. Servo Kinetics, Inc. v. Tokyo Precision Instruments,
475 F.3d 783, 790 (6th Cir. 2007).

¶ 1. Reckley's immediate supervisor was the Chief Prosecutor, Defendant Michael Sheils. Id. Sheils's supervisor was the City's Law Director, Defendant Robin DeBell. Id. Defendant Matthew Kridler was the City Manager and, thus, supervised DeBell and had overall responsibility for all City employees. Id. Prior to the events in question in the present case, Reckley had not been disciplined by any of her superiors. Id. Besides the supervisory staff, other employees in the Prosecutor's office, during the time in question, were Christopher Hickey, another Assistant Prosecutor, and three female secretaries - - Emma Burke, Eileen Trenner and Kathy Cullen. Id. Burke was Reckley's secretary until March 6, 2003. Id. ¶¶ 2, 11.

Reckley presents a long list of Burke's sexually-related office antics that took place prior to May 26, 2003, some of which included grabbing male visitors' butts, climbing face first onto the laps of male visitors, shaking her breasts and offering to wash eyeglasses with them and "hooter flogging" male visitors.[5] Id. ¶ 2.

---

[5]Burke testifies that she probably engaged in "hooter flogging" monthly and describes it as follows:

Q:  What type of behavior would you [engage in]?
A:  We had what we called a hooter flogging.
Q:  What is that?
A:  Put their face between my breasts.
Q:  And you would grab someone's head?
A:  Uh-huh.
Q:  And bring their head towards your breasts?
A:  Uh-huh.
. . .
Q:  And how close would you bring someone's face to your breasts?
A:  Touching.

Reckley asserts that Chief Prosecutor Sheils expressed amusement at Burke's conduct. Id. ¶ 3.  Reckley, on the other hand, "did not welcome the . . . conduct, and . . . frequently shut [her] office door. Id.  Burke also was remiss in tending to Reckley's work, in a timely fashion, yet was never disciplined for this or for her sexually related conduct. Doc. #55, Attach. #28 (Burke Dep.) at 30, 24.  Reckley complained to Sheils of Burke's conduct multiple times, but her concerns were discounted or blame was placed on Reckley for her inability to get along with the secretaries, rather than on Burke. Doc. #21, Attach. #1 (Reckley Dec.) ¶¶ 6, 12

Reckley also alleges that Sheils treated her male counterpart, Hickey, as a colleague, while he treated Reckley as an equal to the secretaries. Id. ¶¶ 14,15. Other disparate treatment between Reckley and Hickey included assigning Reckley more work and allowing Hickey to bring his children to work, but not Reckley. Id. ¶¶ 17, 18.

Reckley wrote a letter to Sheils on May 26, 2003, in which she expressed many concerns, including the aforementioned ones, about the work environment in the Prosecutor's office. Doc. #21, Attach. #2.  The letter discussed, among other matters, "Burke's sexual conduct and comments, Sheils'[s] failure to do anything on his own initiative, and the fact [that] Reckley took the 'heat' for complaining about Burke's sexual conduct and comments." Doc. #21 (Pl.'s Mem. Opp'n) at 9

_____

Doc. #55, Attach. #28 (Burke Dep.) at 22-23.

(citing Doc. #21, Attach. #2). Sheils did not directly respond to the letter, but the disparity in treatment between Reckley and Hickey continued. Doc. #21, Attach. #1 (Reckley Dec.) ¶ 19. For example, Sheils prohibited Reckley, but not Hickey and other male attorneys, from sitting at the secretaries' desks to review cases and he told Hickey of his whereabouts when he was out of the office, but not Reckley. Id. ¶¶ 23. He also made Reckley report any absences in writing, while Hickey was not required to do so. Doc. #53 (Reckley Dep.) at 162. Sheils also began treating Reckley in what she characterizes as a "demeaning" manner, such as speaking to her in a degrading voice when discussing work assignments, suggesting that she could not read her own name, engaging in a two and a half hour "demeaning, harassing, and discriminatory personal attack," wherein he berated her for her "horrible personality" and expressed anger about her previous complaints about Burke's sexual conduct. Doc. #21, Attach. #1 (Reckley Dec.) ¶¶ 20-22, 24, 26. On another occasion, Sheils berated Reckley for being rude to the secretaries and for not following proper absence reporting procedures and told her if she "did one more thing or . . . disrespected the secretaries in any way" that he would fire her. Id. ¶ 28. Reckley eventually took a month-long medical leave, due to emotional and physical pain, which she feels was caused by Sheils's mistreatment of her. Id. ¶ 29.[6]

---

[6]The Plaintiff also presents an argument (much of which does not have citations to the record), pertaining to the alleged similarities in experiences between the Plaintiff and a part-time female assistant prosecutor, Theresa Huenke, who was

While on medical leave, Reckley sent a letter to DeBell and James Bodenmill, the Springfield Personnel Director. Doc. #21, Attach. #3. That 24-page letter, dated January 8, 2004, constituted a grievance against Sheils. Therein, Reckley cited examples of a work environment wrought with emotional abuse, inequities in workloads, favoritism and disciplinary injustices, and acts of retaliation she suffered after complaining of the same. Id.

Reckley returned from her medical leave on January 15, 2004. Doc. #21, Attach. #1 (Reckley Dec.) ¶ 31. On January 28, 2004, Sheils recommended that Reckley be terminated, in a written response to her grievance. Doc. #21, Attach. #4 (Sheils Mem., dtd. Jan. 28, 2004). Therein, he "categorically den[ied] the vitriolic accusations of misconduct, negligence, incompetence, abuse of authority and verbal abuse" made by Reckley and, instead, categorized Reckley as being "a detriment to the efficient and effective operation of the office," given her alleged inability to get along with the other members of the staff and court personnel. Id. at 1, 5.

Reckley responded to Sheils's letter by another letter to DeBell, wherein she

---

hired after the Plaintiff was terminated. Doc. #55 at 14-15. Notwithstanding the lack of evidentiary support for this line of argument, given the Court's ultimate conclusion herein that the Plaintiff's arguments on these same points (i.e., secretaries' inappropriate conduct and Sheils' favoritism of secretaries and men, as being supportive of her sexual harassment and retaliation claims) are unpersuasive, neither Huenke's validation of the secretaries' inappropriate office conduct, nor her comments regarding Sheils's apparent favoritism towards the secretaries and Hickey over her, sheds any light on whether it is more or less likely that the Plaintiff was subjected to a sexually hostile work environment.

contradicted the response given by Sheils and attacked his credibility. Doc. #21, Attach. #5 (Reckley ltr., dtd. Feb. 4, 2004). DeBell answered by summarizing what he had reviewed, in the course of addressing Reckley's grievance, and concluded by stating that "[Reckley's] perspective regarding her work environment is substantially at odds with . . . other[s'] perspective about that environment" and that "it is in [his] view clear who ought to be separated from that environment, not as a punitive measure but for the good of the office and the larger goals and objectives of the Law Department." Doc. #21, Attach. #6 (DeBell Memo., dtd. Feb. 12, 2004) at 13.

Reckley then filed a notice of appeal to Kridler, the Springfield City manager. Doc. #21, Attach. #7. Kridler hired a third party to meet with Reckley and the others in the Prosecutor's office, in order to address some of the issues in Reckley's complaint and in hopes of improving relationships in that office. Doc. #21, Attach. #10 (Kridler ltr., dtd. June 15, 2004). Kridler ultimately decided to terminate Reckley, as of July 23, 2004, because "the Office of the City Prosecutor cannot effectively move forward and provide expected high quality prosecutorial services . . . given the level of tension and difficulty among members of the staff there." Doc. #21, Attach. #11 (Kridler ltr., dtd. July 23, 2004).

During and after the time that her grievance was being processed through City channels, Reckley filed two charges with the Ohio Civil Rights Commission ("OCRC"), the first, on April 7, 2004, wherein she claimed the she had been

discriminated against based on sex and retaliation. Doc. #21, Attach. #9.  After

her termination, she filed a second charge, on July 27, 2004, asserting the same

claims of discrimination. Doc. #21, Attach. #12.[7]


II.  <u>Review of Magistrate Judge's Decision and Order Regarding Discovery
     Dispute (Doc. #59)</u>

The Magistrate Judge was faced with the question of whether specific

excerpted deposition testimony and specifically identified email correspondence

were covered by the attorney-client privilege. Doc. #58 (Ltr. from Atty. Dixon,

attaching allegedly privileged materials).  The Defendants claimed that all of the

materials are so covered, while the Plaintiff claimed they are not.  The Magistrate

Judge conducted a hearing to enable counsel to argue the privilege question.  Upon

consideration of the oral arguments and a review of the subject communication,

the Magistrate Judge concluded that all of the materials were covered by the

attorney-client privilege and, thus, not discoverable by the Plaintiff.[8] Doc. #59.

The Plaintiff has objected to the Magistrate Judge's decision, arguing that one of

the emails in question was sent in the sender's (DeBell's) capacity as a department

---

[7]In her Memorandum in Opposition to the Defendants' Motion for Summary Judgment, Reckley states that she received a right to sue letter from the EEOC, on April 13, 2005, but she does not cite to any evidence in support of this statement. Doc. #21 at 17.

[8]Actually, some of the materials were inadvertently disclosed by defense counsel to the Plaintiff prior to the submission of this question to the Magistrate Judge, but that judicial officer concluded that this inadvertent disclosure did not operate to waive the privilege. Doc. #59 at 3-4 (citing Fed. R. Evid. 502(b)).

head (apparently in contrast to being in his capacity as a legal adviser) and also that all of the challenged communications were part of the complaint/grievance procedure, rather than being attorney-client communications. Doc. #61 at 1-2.

The Court finds that the objections raised by the Plaintiff were already sufficiently addressed by the Magistrate Judge, in his Decision. Doc. #59 at 2-3. For example, Judge Merz noted that the Plaintiff "asserts that the communications . . . are not privileged because they are the ordinary communications within the corporate structure of the City about a subordinate's complaints in the workplace," but concludes that, in each of the referenced communications, the Defendants "sought or gave legal advice concerning Ms. Reckley's civil rights claims" and, further, that "[t]he fact that communication about legal advice is between or among employees of the client does not deprive it of its privileged status." Doc. #59 at 2-3.

Based upon the reasoning and citations of authority set forth by the Magistrate Judge in his Decision and Order regarding the discovery dispute, as well as upon a thorough consideration of the communications in question and the applicable law, this Court adopts and affirms the Decision and Order of the Magistrate Judge (Doc. # 59) and overrules the Plaintiff's objections thereto (Doc. #61).

III.   <u>Summary Judgment Standard</u>

Summary judgment must be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>

<u>v. Catrett</u>, 477 U.S. 317, 322 (1986).  The moving party,

> always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions on
> file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

<u>Id.</u> at 323; <u>see also</u> <u>Boretti v. Wiscomb</u>, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must

present evidence that creates a genuine issue of material fact making it necessary

to resolve the difference at trial." <u>Talley v. Bravo Pitino Rest., Ltd.</u>, 61 F.3d 1241,

1245 (6th Cir. 1995); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250

(1986).  Once the burden of production has so shifted, the party opposing

summary judgment cannot rest on its pleadings or merely reassert its previous

allegations, it is not sufficient to "simply show that there is some metaphysical

doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 586 (1986).  Rule 56(e) "requires the nonmoving party to go

beyond the [unverified] pleadings" and present some type of evidentiary material in

support of its position. <u>Celotex</u>, 477 U.S. at 324.  "The plaintiff must present more

than a scintilla of evidence in support of his position; the evidence must be such

that a jury could reasonably find for the plaintiff." <u>Mich. Prot. & Advocacy Serv.,</u> <u>Inc. v. Babin</u>, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" <u>Hancock v. Dodson</u>, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. <u>Anderson</u>, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1091 (1990); <u>see also</u> <u>L.S.</u>

12

Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

IV.    Defendants' Motion for Summary Judgment

The Defendants initially contend that certain of the Plaintiff's claims are barred by the applicable statutes of limitations, specifically her claims pertaining to a sexually hostile work environment, under § 1983, Ohio Revised Code § 4112.02(A) and Title VII.[9] Doc. #38 at 10-14. As to the remaining claims, the Defendants argue that they are entitled to summary judgment, because there exists no genuine issue of material fact. Id. at 14-37. The Court will begin with an analysis of the statute of limitations argument and then turn to a discussion of the substantive viability of the remaining claims.

_____

[9]The Defendants rather loosely imply that they are challenging all of the Plaintiff's claims, in their statute of limitations argument, although they only point to facts pertinent to the sexually hostile work environment claim and, thus, the Court will limit its analysis to the same. E.g. Doc. #38 at 10-14.

A.  <u>Statutes of Limitations</u>

1.  <u>Parties' Positions</u>

The Defendants argue that a two-year statute of limitations governs both the § 1983 claim and the Ohio sexually hostile work environment claim and that the clock started running on those claims on May 26, 2003, when the Plaintiff sent the letter to Sheils complaining of the alleged workplace improprieties. Doc. #38 at 10-14.  Since the Plaintiff did not file suit until July 14, 2005, the Defendants assert that she is barred by the statute of limitations, as to these claims.  Furthermore, the Defendants state that the Title VII claim has a 300-day statute of limitations, which also began running on May 26, 2003, and since the Plaintiff did not file a charge with the OCRC until April 7, 2004, her Title VII charge was likewise filed too late.

As to the statutory period for her sexually hostile work environment claim, the Plaintiff asserts that she had six years to file a claim thereunder, in accordance with Ohio Revised Code § 4112.99.[10] Doc. #55 at 16.  With regard to her other claims, the Plaintiff agrees with the length of the periods, as stated by the

_____

[10]In her Amended Complaint, the Plaintiff purports to bring her sexually hostile work environment and retaliation claims under both § 4112.02 and § 4112.99. Doc. #6 ¶¶ 17-20.  The Ohio Supreme Court recognizes that "R.C. 4112.99 creates an independent civil action to remedy any form of discrimination identified in R.C. Chapter 4112," but also recognizes that "there may be instances where R.C. 4112.99 would conflict with other more specific provisions of R.C. Chapter 4112." <u>Cosgrove v. Williamsburg of Cincinnati Management Co.</u>, 70 Ohio St. 3d 281, 290, 638 N.E.2d 991 (1994) (quotation omitted).

Defendants, but disagrees on when those periods commenced. Doc. #21 at 32-33; Doc. #55 at 15-16.  She asserts that the statutory periods did not begin to run, due to the continuing nature of the harassment, until the Defendants terminated her in July 2004.

In reply, as to the argument asserting a six-year statutory period under § 4112.99, the Defendants contend that this provision does not apply, because a more specific statute, § 2744.04, applies to political subdivisions and their employees and dictates a two-year period for the same. Doc. #60 at 5.  The Defendants also argue that the continuing violation doctrine does not apply, since the Plaintiff was aware that her rights had allegedly been violated on May 26, 2003, and the doctrine is premised on the equitable notion that the statute should begin to run when a reasonable person would be aware that her rights had been violated. Id. at 4.  Further, even if the doctrine does apply, the Defendants assert that the Plaintiff has set forth no evidence to indicate that at least one act of discrimination occurred within the critical period. Id.


2.    Law

In Ohio, there is a two-year statute of limitations for claims brought under 42 U.S.C. § 1983. Ohio Rev. Code Ann. § 2305.10; see also Owens v. Okure, 488 U.S. 235, 236, 109 S. Ct. 573 (1989) (determining that state residual or general personal injury statutes of limitations apply to § 1983 claims); Browning v.

15

Pendleton, 869 F.2d 989, 992 (6th Cir. 1989) (concluding that two-year statutory

period, as stated in Ohio Revised Code § 2305.10, applies to § 1983 actions in

Ohio); Nadra v. Mbah, 119 Ohio St. 3d 305, 893 N.E.2d 829 (2008) (same).  As

to claims brought under Ohio's § 4112, there is also a two-year statute of

limitations, for claims against a political subdivision or its employees.[11] Ohio Rev.

Code Ann. § 2744.04(A) (imposing two year statute of limitations for actions

against political subdivisions, in connection with governmental or proprietary

functions); Villa v. Vill. of Elmore, 2005 Ohio 6649, ¶ 25 (Ohio 6th App. Dist. Dec.

16, 2005) (finding that § 2744.04(A)'s two-year statute of limitations applies to

political subdivisions and their employees); Gnezda v. City of N. Royalton, 2004

Ohio 1678, ¶15 (Ohio 8th App. Dist. Apr. 1, 2004) (same)).  With regard to Title

VII claims, plaintiffs have a 300-day statute of limitations, within which to file a

charge with the OCRC. 42 U.S.C. § 2000e-5(e)(1); Nichols v. Muskingum College,

318 F.3d 674, 678 (6th Cir. 2003) (noting that the OCRC is an authorized state

agency, under 42 U.S.C. § 2000e-5(e)(1)).

---

[11]The Plaintiff is correct in noting that there is, in general, a six-year
statutory period under Ohio Revised Code § 4112.99.  However, the more specific
statutory language of § 2744.04 applies, in this case, since this is a claim against
a political subdivision and its employees.  As noted by the Ohio Supreme Court,
when addressing the situation where § 4112.99 conflicts with a more specific
provision in Chapter 4112, "[t]o the extent that other specific provisions set forth a
statute of limitations, a conflict would exist between such specific provision and
R.C. 4112.99, relative to the applicability of the statute of limitations.  In such an
event, pursuant to R.C. 1.51, the specific provision's statute of limitations must
prevail." Cosgrove v. Williamsburg of Cincinnati Management Co., 70 Ohio St. 3d
281, 290-91, 638 N.E.2d 991 (1994) (citation omitted).

In general, "statutes of limitations. . . are triggered at the time the alleged discriminatory acts occurred." Trzebuckowski v. City of Cleveland, 319 F.3d 853, 857 (6th Cir. 2003) (quotation omitted).  The Sixth Circuit recognizes, however, that the statute can be tolled for "continuing violations" that fall within two categories of "narrowly limited exceptions" to the general rule.

> The first category of continuing violations . . . "arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation."  This category requires that at least one of the forbidden discriminatory acts occurs within the relevant limitations period.  The second category of continuing violations arises where there "has occurred a longstanding and demonstrable policy of discrimination."

Id. (quoting Dixon v. Anderson, 928 F.2d 212, 216-17 (6th Cir. 1991)).  The Plaintiff, in this case, asserts that the first category applies, arguing generally that at least one instance of discriminatory conduct occurred within the statutory period. Doc. #21 at 32-33; Doc. #55 at 15-16.

The Defendants counter by asserting, among other things, that the Plaintiff points to no evidence that suggests that at least one discriminatory act occurred within the critical period.  Specifically, according to Defendants, "Plaintiff has submitted various documents, declarations, affidavits and depositions, but the only date-specific complaints that occur after May 2003 relate to nonsexual matters. There is no discrete act upon which to anchor [P]laintiff's claim; all of the identifiable events are nonsexual, have no gender identification and show no animus to [P]laintiff." Doc. #60 at 4.

The Defendants' argument is well-taken, at least with regard to the

allegations pertaining to the allegedly sexually hostile work environment. While the Plaintiff states, in her brief, that at least one instance of discrimination occurred within the statutory periods, she points to no specific examples. The only allegations of conduct pertaining to a sexually hostile work environment that are date-specific occurred prior to her submission of the letter in May 2003, which is outside both the two-year and 300-day statutory time periods.[12] Thus, the Defendants' Motion for Summary Judgment (Doc. #38) is SUSTAINED, as it pertains to the Plaintiff's sexually hostile work environment (not retaliation) claims under § 1983, Title VII and Ohio Revised Code § 4112.02.[13]

At this juncture, then, the following claims survive: (1) retaliation, in violation of the First Amendment and pursuant to 42 U.S.C. § 1983 (Count 1); (2) retaliation, in violation of Title VII and Ohio Revised Code § 4112.02(I) (Count 3); and (3) intentional infliction of emotional distress (Count 4).

---

[12]The only suggestion in her brief regarding conduct the Plaintiff considers to have been sexually harassing that occurred after May 2003 is Burke's testimony that she no longer participated in hooter-flogging after Reckley's employment ended. Doc. #55, Attach. #28 (Burke Dep.) at 25-26. The Plaintiff points to nothing to indicate that she (the Plaintiff) was aware of this conduct after May 2003, however.

[13]Given the Court's ultimate conclusion, in the retaliation analysis *infra*, that there does not exist a genuine issue of material fact as to whether the Plaintiff was subjected to unwelcomed sexual harassment based on her sex, the Plaintiff would have failed to establish a *prima facie* case of sexually hostile work environment and, thus, her claim would have failed under that substantive analysis, too.

B.    Retaliation

The Plaintiff claims that the Defendants retaliated against her for

participating in protected conduct, in violation of Title VII, Ohio Revised Code

§§ 4112.02(I) and the First Amendment.  As to the claim under Title VII, that law

prohibits employers from discriminating against employees on the basis of sex, 42

U.S.C. §§ 2000e-2(a)(1), and further prohibits employers from discriminating

against an employee "because [she] has opposed any practice made an unlawful

employment practice by [Title VII], or because [she] has . . . participated in any

manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. §

2000e-3(a).  Likewise, the Ohio Revised Code makes it unlawful to discriminate

against an employee based on sex, Ohio Rev. Code Ann. §§ 4112.02(A), as well

as for "any person to discriminate in any manner against any other person because

that person has opposed any unlawful discriminatory practice defined in this

section . . . ." Ohio Rev. Code Ann. § 4112.02(I).  With regard to the claim under

the First Amendment, the Sixth Circuit has determined that "[a] public employee

has the constitutionally protected right to comment on matters of public concern

without fear of reprisal from the government as employer.[14] Warren v. Ohio Dep't

---

[14]The Defendants attempt to argue that Title VII provides the exclusive
remedy in this case. Doc. #38 at 19.  The Sixth Circuit has held, however, that
"[a]n employee may sue a public employer under both Title VII and § 1983 when
the § 1983 violation rests on a claim of infringement of rights guaranteed by the
Constitution." Warren v. Ohio Dep't of Pub. Safety, 24 Fed. Appx. 259, 267 n.4
(6th Cir. Oct. 3, 2001) (citing Day v. Wayne County Bd. of Auditors, 749 F.2d
1199, 1205 (6th Cir. 1984)).

of Pub. Safety, 24 Fed. Appx. 259, 266-67 (6th Cir. Oct. 3, 2001) (citing Connick

v. Myers, 461 U.S. 138, 147, 103 S. Ct. 1684 (1983)).  The Court will now

consider the details of each of these claims to determine if the Plaintiff has set

forth sufficient evidence to establish a *prima facie* case under the law.


      1.    Retaliation under Title VII/Ohio Revised Code § 4112.02(I)
              (Count 3)

In order to establish a *prima facie* case of retaliation, under either Title VII or

§ 4112.02(I), a plaintiff must show that:

(1) she engaged in activity protected by Title VII;

(2) this exercise of protected rights was known to defendant;

(3) defendant thereafter took adverse employment action against the
plaintiff, or the plaintiff was subjected to severe or pervasive
retaliatory harassment by a supervisor; and

(4) there was a causal connection between the protected activity and
the adverse employment action or harassment.

Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 595 (6th Cir. 2007) (citing

Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)); see

also Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008) ("Ohio

courts have held that federal caselaw interpreting Title VII of the Civil Rights Act of

1964 (Title VII) 'is generally applicable' to cases involving sexual harassment

claims under state law.") (citations omitted).  While the parties dispute various

parts of this test, the Court finds it necessary to focus only on the first prong, to

wit:  whether the Plaintiff was engaged in protected conduct.

As to whether she was "engaged in protected conduct," the Plaintiff argues that the various oral and written complaints she made were sufficient to satisfy this requirement, because, in so doing, she was complaining about a sexually hostile work environment. Doc. #21 at 30-33; Doc. #55 at 17. The Defendants contend that these complaints are not "protected activities" and the Court agrees.

While complaints of a sexually hostile work environment would generally be protected conduct, see 42 U.S.C. § 2000e-2(a)(1), § 2000e-3(a), the Court concludes that the conduct of which the Plaintiff complained, in the present case, did not constitute a sexually hostile work environment. The Plaintiff does not have to prove that the Defendants' alleged misconduct was, in fact, unlawful under Title VII to prevail on her retaliation claim. She must, however, demonstrate that she had a reasonable, good faith belief that the conduct was prohibited by Title VII, in order to do so. "The plaintiff need not show that a violation actually occurred. 'It is good faith and reasonableness, not the fact of discrimination, that is the critical inquiry in a retaliation case.'" David v. ANA TV Network, Inc., 2000 U.S. App. LEXIS 2477, *15 (6th Cir. Feb. 16, 2000) (quoting Rucker v. Higher Educ. Aids Bd., 669 F.2d 1179, 1182 (7th Cir. 1982)); see also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 269, 121 S. Ct. 1508 (2001) (considering whether plaintiff could have reasonably believed that alleged harassment violated Title VII, in determining whether plaintiff's retaliation claim was actionable); EEOC v. Rocket Enters., 2008 U.S. Dist. LEXIS 20907, **13-14 ( E.D. Mich. Mar. 18, 2008) ("[I]n

21

order for a retaliation claim to be actionable under Title VII, the person complaining must have reasonably believed the conduct complained of violated Title VII.  In the event that reported conduct is not serious enough that a reasonable person could believe it violated Title VII, a claim for retaliation will not lie.").

The Supreme Court has determined that a hostile work environment exists when the workplace "is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (internal citation and quotation marks omitted).  In order to bring a successful claim for sexual harassment, based upon a claim of hostile work environment, an employee must establish the following five elements:

(1) the employee is a member of a protected class,

(2) the employee was subject to unwelcomed sexual harassment,

(3) the harassment complained of was based on sex,

(4)  the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive work environment, and

(5)  the existence of respondeat superior liability.

<u>Conley v. City of Findlay</u>, 2008 U.S. App. LEXIS 2382, **21-22 (6th Cir. Jan. 28, 2008) (citing <u>Fleenor v. Hewitt Soap Co.</u>, 81 F.3d 48, 49 (6th Cir. 1996)).

As to the second and third prongs of this test, the Plaintiff argues that

she was subjected to unwelcomed sexual harassment that was based on sex, as evidenced by Burke's sexually-related office conduct, which Sheils tolerated, and the fact that Sheils mistreated the Plaintiff, in general, and also treated Hickey and other males more favorably than he treated the Plaintiff.  With regard to Burke's conduct, the Plaintiff asserts that such caused "discomfort to female employees, such as Reckley" and "gave Burke preferential treatment as Sheils overlooked her poor work performance." Doc. #21 at 26.  As far as Sheils's mistreatment of her is concerned, the Plaintiff argues that instead of treating her like a male colleague, Sheils treated her as one of the females in the office (i.e., secretaries) and failed to ensure that she had the support she needed to properly perform her job. Id. at 25.

Such assertions do not demonstrate a reasonable, good faith belief that the Defendants violated Title VII.  In order to show that her alleged harm was "based on her sex," she "must show that but for the fact of her sex, she would not have been the object of harassment." Williams v. GMC, 187 F.3d 553, 565 (6th Cir. 1999) (quotation omitted).  Although behavior does not have to be sexually explicit to be considered "based on sex", it must be "directed at women and motivated by discriminatory animus against women" in order to satisfy the standard. Id.; see also Ladd v. Grand Trunk Western R.R., 552 F.3d 495, 501 (6th Cir. 2009) (considering the fact that sexual slurs ("lesbian," "dyke," and "gay") were not directed at plaintiff diminished their severity in the hostile work environment analysis).  The Court's focus here, then, is on whether the alleged harassment

would have occurred had the Plaintiff not been a female. <u>Cecil v. Louisville Water</u> <u>Co.</u>, 2008 U.S. App. LEXIS 24230, *22, 301 Fed. Appx. 490 (6th Cir. Nov. 24, 2008).

As far as the allegations pertaining to Burke's conduct are concerned, while unquestionably unprofessional, nothing presented by the Plaintiff indicates that Burke's sexually explicit actions were directed at women or motivated by a discriminatory animus against women.  There is no indication that Burke's conduct would have ceased or that Sheils would have reigned in her conduct had the Plaintiff not been a female.  On the contrary, it appears that Burke might have had even more reason to engage in her provocative behavior had she had another male in her audience.  The law does not prohibit misconduct that is unprofessional or that makes female coworkers "uncomfortable"; rather, it prohibits conduct that is discriminatory in the sense that it is directed at women and motivated by discriminatory animus against women, which the alleged conduct was not.

Turning to the Plaintiff's allegations about Sheils's mistreatment of her, the Court finds this argument lacking for two reasons.  First, because the clear implication from the record is that the alleged mistreatment was in retaliation for the Plaintiff's complaining about the office environment, rather than being harassment in and of itself, and, second, even if the Plaintiff is asserting that Sheils mistreated her for reasons other than retaliation, the Plaintiff has presented no evidence that such mistreatment was based on her sex.

24

In Morris v. Oldham County Fiscal Court, the Sixth Circuit made it clear that conduct that is alleged to have been motivated entirely by the employers' displeasure with the employee for complaining about potentially discriminatory conduct cannot also be the basis for a hostile work environment claim. Morris, 201 F.3d 784, 790-91 (6th Cir. 2000) ("Plaintiff argues that we should include Likins's alleged 'retaliatory conduct' . . . into the hostile working environment equation.  To do so would be a mistake, as [plaintiff] does not claim that Likins acted this way 'because of sex.'"); see also Vaughn v. Louisville Water Co., 2008 U.S. App. LEXIS 24224, ** 20-21, 2008 Fed. Appx. 0728N  (6th Cir. Nov. 24, 2008) (in assessing hostile work environment claim, considering only conduct that was allegedly gender-based, rather than retaliatory conduct); Cecil v. Louisville Water Co., 2008 U.S. App. LEXIS 24230, **21-22, 301 Fed. Appx. 490 (6th Cir. Nov. 24, 2008) (same).  Because the record, in this case, indicates that Sheils's alleged mistreatment of the Plaintiff (e.g., treating her like one of the secretaries, rather than as a colleague; assigning her excessive work; allowing Hickey to bring his children to work, but not Reckley; prohibiting Reckley, but not Hickey and other male attorneys, from sitting at the secretaries' desks; telling Hickey of his whereabouts, but not Reckley; talking to Reckley in demeaning tones) was in retaliation for the Plaintiff's complaints about the office environment, it is not appropriate for the Court to consider the same in evaluating the hostile work environment claim.

Even assuming the Plaintiff was suggesting that some of this mistreatment was "sex based", rather than retaliatory, however, she has not pointed to sufficient evidence to support this argument. There is nothing in the record to indicate that the alleged mistreatment was as a result of a discriminatory animus against women (as opposed to an animus against an employee who is understandably a non-supporter of the lax and unprofessional office environment, which is not constitutionally forbidden conduct). The Plaintiff offers only a comparison of how Sheils treated her, in comparison to how he treated other males, as proof of the gender bias. Courts have found such, by itself, to be insufficient to support such a charge.[15]

For example, the Sixth Circuit has considered two cases that involved allegations pertaining to differing treatments of male and female employees, along with other instances of sexual harassment. In Williams v. GMC, 187 F.3d 553

---

[15]Evidence that an employer has treated an employee differently from similarly situated employees is typically relevant to proving a *prima facie* case of employment discrimination, on the basis of gender, race, age, ethnicity and the like, rather than in proving a sexually hostile work environment. In analyzing whether a plaintiff had satisfied his *prima facie* case of employment discrimination, the Sixth Circuit states that in order to be deemed "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)). The Plaintiff, in the instant case, has not asserted that she is proceeding on a claim of standard employment discrimination, however.

(6th Cir. 1999), the Court determined that the plaintiff had set forth enough

evidence to survive summary judgment on the "based on sex" prong, but in

Bowman v. Shawnee State Univ., 220 F.3d 456, 464 (6th Cir. 2000), the

Appellate Court came to the opposite conclusion.  In comparing the factual

situations in those two cases, the Bowman Court stated:

> In Title VII actions, however, it is important to distinguish between
> harassment and discriminatory harassment in order to "ensure that
> Title VII does not become a general civility code." Faragher v. City of
> Boca Raton, 524 U.S. 775, 788, 141 L. Ed. 2d 662, 118 S. Ct. 2275
> (1998) (citation omitted).  In Williams, evidence that the plaintiff was
> ostracized on myriad instances when others were not, combined with
> gender-specific epithets used, such as "slut" and "fucking women,"
> was sufficient to create an inference that her gender was the
> motivating impulse for her co-workers' behavior and allowed the
> non-sexual harassment to be considered in the hostile environment
> analysis. See Williams, 187 F.3d at 565-66.  Unlike the plaintiff in
> Williams, Bowman has not alleged that [the defendant] made a single
> comment evincing an anti-male bias.  Besides a bare and unsupported
> assertion that some women employees were allowed to engage in
> work outside the University while he was not, Bowman has not
> shown that the non-sexual conduct he complains of had anything to
> do with his gender.  While he may have been subject to intimidation,
> ridicule, and mistreatment, he has not shown that he was treated in a
> discriminatory manner because of his gender.

Bowman, 220 F.3d at 464.  In sum, the Williams plaintiff survived summary

judgment, by showing that she was ostracized on myriad occasions when others

were not and that she was the target of various gender-specific epithets.  In

Bowman, however, the fact that the male plaintiff had been subject to intimidation,

ridicule, and mistreatment, as well as that women employees were allowed to

engage in work outside the University, while he was not, was insufficient evidence

to enable the Plaintiff to survive summary judgment.[16]

---

[16]Bowman, the male plaintiff (college instructor), alleged the following inappropriate conduct on the part of Jahnke, the female defendant employer (the dean of education):

1) Jahnke placed her hand on Bowman's shoulder and rubbed it for approximately one to two seconds.

2) Jahnke chastised Bowman for missing classes that he did not miss.

3) After emphasizing the importance of teaching every class, Jahnke reprimanded Bowman for not attending an optional meeting scheduled at a time when he had to teach a class.

4) Jahnke forced Bowman to apologize for failing to attend a party hosted by one of Jahnke's friends.

5) At a party at Jahnke's house, Bowman was leaning against the stove when Jahnke grabbed his buttocks. Bowman turned around and told Jahnke that if someone were to do that to her she would fire him or her. Jahnke replied that "she controlled [Bowman's] ass and she would do whatever she wanted with it."

6) Bowman went to Jahnke's house to repair her deck. While there, Jahnke told Bowman "let's get it finished, [and then] you and I can try [the whirlpool] out together."

7) Jahnke invited Bowman and his girlfriend to her house to go swimming in her pool. After a short period of time, Bowman decided to leave, at which point Jahnke commented to him that "next time, you know, you ought to come by yourself and enjoy yourself."

8) Bowman met with Jahnke in her office. Jahnke placed her hands upon Bowman and pushed him towards the door.

9) Jahnke called Bowman at home on various occasions.

10) Jahnke demanded that Bowman leave a phone number with her when he was on vacation; Jahnke required Bowman to take additional athletic training in order for him to remain in his position; Jahnke

Like the plaintiff in <u>Bowman</u>, the Plaintiff here has not created a genuine issue of material fact as to whether the mistreatment she complains of was "based on her sex." The Plaintiff has pointed to nothing to indicate that either the sexual banter in the office or the non-sexual conduct she complains of had anything to do with her gender.[17] Thus, the Plaintiff has not set forth an adequate claim for a sexually hostile work environment. As noted above, however, the Plaintiff need not prove that the Defendants' alleged misconduct was, in fact, unlawful under Title VII to prevail on her retaliation claims. She must only demonstrate that she had a "reasonable, good faith belief" that the conduct was unlawful. <u>David v. ANA TV Network, Inc.</u>, 2000 U.S. App. LEXIS 2477, *15 (6th Cir. Feb. 16, 2000).

On this point, the Court makes two observations. The first is that the Plaintiff, in this case, was an attorney and, as such, should have had at least some familiarity with the standards governing Title VII. The second is a more general

---

required Bowman to investigate fellow employees and students; Jahnke demanded that Bowman take his name off his office door when she removed him from his position; Jahnke required Bowman to work in the summer without pay; Jahnke allowed females to work outside the University, but prohibited Bowman from doing so; Jahnke threatened that she would "pull the plug" on Bowman if he did not submit to her wishes and; Jahnke reprimanded Bowman for working extra jobs on his own free time, but demanded that Bowman come to her home during working hours to perform extra duties.

<u>Bowman</u>, 220 F.3d at 459.

[17]The Court also notes that while the Plaintiff alleges that Sheils favored the male attorneys, in the office, she also alleges that he showed favoritism to the female secretaries, which weakens her argument about disparate treatment even more.

observation that courts recognize that it is not reasonable for employees to presume that all complaints made by them are protected activity. "In the event that reported conduct is not serious enough that a reasonable person could believe it violated Title VII, a claim for retaliation will not lie." EEOC v. Rocket Enters., 2008 U.S. Dist. LEXIS 20907, **13-14 ( E.D. Mich. Mar. 18, 2008) (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S. Ct. 1508 (2001)).

The Supreme Court notes that the essence of a hostile work environment claim is "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult.'" Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S. Ct. 367 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S. Ct. 2399 (1986)). As such, the Court made clear that conduct that is "merely offensive" is not actionable. Id. Without these threshold requirements for suit, the District Court for the Eastern District of Michigan recently opined, "an employee would be free to continually complain about benign comments that only offend their subjective sensitivities and an employer would be prevented from reproaching the employee for the nuisance complaints for fear of litigation." EEOC v. Rocket Enters., 2008 U.S. Dist. LEXIS 20907, *16 ( E.D. Mich. Mar. 18, 2008).

In the present case, the Plaintiff has set forth no facts to indicate that the workplace was permeated with intimidation, ridicule, and insult, based on her gender. Instead, the facts indicate that the Plaintiff found the work environment to be "merely offensive". Thus, the Plaintiff has not set forth sufficient evidence to

demonstrate that a reasonable person, in general (and herself, as an attorney, in particular) could have a good faith belief that she was participating in protected conduct and that the Defendants violated Title VII by retaliating against her for the same. Because there is no genuine issue of material fact on this point, the Defendants' Motion for Summary Judgment (Doc. #38) is SUSTAINED, as it pertains to the Plaintiff's retaliation claims under Title VII and Ohio Revised Code § 4112.02 (Count 3).

At this juncture, then, the following claims survive: (1) retaliation, in violation of the First Amendment and pursuant to 42 U.S.C. § 1983 (Count 1); and (2) intentional infliction of emotional distress (Count 4).

2.    First Amendment Retaliation (Count 1)

The Sixth Circuit instructs that in order for a public employee to establish a claim of First Amendment retaliation, she must demonstrate the following:

> (1) that [she] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused [her] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [her] constitutional rights.

Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1048 (6th Cir. 2001)[18]

_____

[18]The Supreme Court recently decided a First Amendment retaliation case, Garcetti v. Ceballos, 547 U.S. 410, 126 S. Ct. 1951 (2006). The specific focus of that case is not applicable in the present case, however, because the present Plaintiff did not make complaints about the alleged sexual harassment, pursuant to

(quoting <u>Leary v. Daeschner</u>, 228 F.3d 729, 737 (6th Cir. 2000)). To demonstrate that she was engaging in constitutionally protected speech, a plaintiff must "show that her speech touched on matters of public concern." <u>Id.</u> The Sixth Circuit also recognizes that "allegations of sexual harassment, like allegations of racial harassment, are matters of public concern." <u>Bonnell v. Lorenzo</u>, 241 F.3d 800, 812 (6th Cir. 2001) (citing, among others, <u>Connick v. Myers</u>, 461 U.S. 138, 146, 103 S. Ct. 1684 (1983)).

The Plaintiff's First Amendment retaliation claim fails, in the present case, for the same reasons her Title VII retaliation claim failed. While the First Amendment guards against retaliation for engaging in constitutionally protected speech, such as making allegations of sexual harassment, the allegations the Plaintiff made here were not of sexual harassment, but were, rather, about the unprofessional office conduct of the secretarial staff and the manner in which Sheils treated her, which was not a "sex based" allegation, as explained above. Because the Plaintiff has not set forth sufficient evidence to demonstrate a genuine issue of material fact, as to whether the Defendants retaliated against her for engaging in an activity protected by the First Amendment, the Defendants' Motion

_____

her official duties, as did the plaintiff in <u>Garcetti</u>. <u>See</u> <u>Garcetti</u>, 547 U.S. at 421 ("The controlling factor in [the respondent's] case is that his expressions were made pursuant to his duties as a calendar deputy [and] . . . the fact that [he] spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case--distinguishes [his] case from those in which the First Amendment provides protection against discipline.").

for Summary Judgment (Doc. #38) is SUSTAINED, as it pertains to the Plaintiff's First Amendment retaliation claim, under 42 U.S.C. § 1983 (Count 1).

Having disposed of Counts 1-3 in the Amended Complaint, the Court will now address the Plaintiff's sole remaining claim - - intentional infliction of emotional distress (Count 4).

C.      Intentional Infliction of Emotional Distress (Count 4)

As her final claim for relief, the Plaintiff asserts a state law claim for intentional infliction of emotional distress.  The Ohio Supreme Court has recognized that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." Yeager v. Local Union 20, Teamsters, 6 Ohio St. 3d 369, syl., 453 N.E.2d 666 (1983).  To maintain a claim for intentional infliction of emotional distress, a plaintiff must set forth proof of the following elements:

(1)    [The defendants] intended to cause [her] emotional distress;

(2)    [The defendants'] conduct was so extreme and outrageous as to exceed all bounds of decency and be utterly intolerable in a civilized society;

(3)    [The defendants'] conduct was the proximate cause of [the plaintiff's] psychic injuries; and

(4)    [The plaintiff's] mental anguish was such that no reasonable person could be expected to endure it.

33

<u>Dixon v. Northridge</u>, 2008 Ohio App. LEXIS 2301, *29, 2008 Ohio 2744 (Ohio 5th

App. Dist. June 5, 2008) (citing <u>Ashcroft v. Mount Sinai Medical Center</u>, 68 Ohio

App. 3d 359, 588 N.E. 2d 280 (Ohio 8th App. Dist. 1990)).

In the present case, the Defendants contend that the Plaintiff has not set forth

evidence to demonstrate that their alleged conduct was "extreme and outrageous"

(prong two) or that her mental anguish was sufficiently extreme (prong four) to

satisfy her burden. Doc. #38 at 41. The Plaintiff responds by stating that the

"Defendants' actions . . . were extreme and outrageous" and then by describing

the physical and emotional repercussions she suffered as a result of enduring such

actions.[19] The Court need not consider whether the Plaintiff's allegations

_____

[19]As to her physical and emotional conditions, the Plaintiff testifies as
follows:

> I have suffered . . . injury to my physical and mental well-being as a
> result of defendants' actions. I have experienced chronic pain,
> anxiety, and emotional distress. I was tense every day at work, and
> my mind was preoccupied with my hostile working conditions seven
> days a week. I sought counseling when I discovered the pornography
> on my computer in April, 1999. On February 21, 2003, I began
> prescription treatment for significant depression. I began treatment
> for fibromyalgia in August of 2003. My medical condition worsened
> in 2003 with Mr. Sheils' harassment. After I was repeatedly
> demeaned and berated by Mr. Sheils, I was forced to seek a medical
> leave of absence from December 16, 2003 through January 14,
> 2004. I returned to work for six months but was emotionally
> devastated when I was terminated. By May, 2006, I was unable to
> overcome the emotional and physical distress, and I applied for and
> was granted disability for depression and myofascial pain
> syndrome/fibromyalgia.

Doc. #21, Attach. #1 (Reckley Dec.) ¶ 65.

pertaining to her physical and emotional conditions are sufficient to demonstrate that she suffered mental anguish such that no reasonable person could be expected to endure, given its conclusion that she has not shown that the Defendants' conduct was "so extreme and outrageous as to exceed all bounds of decency and be utterly intolerable in a civilized society."

With respect to the necessity that the alleged conduct be "extreme and outrageous," the Ohio Supreme Court points to the Restatement Second of Torts, which reads as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Yeager, 6 Ohio St. 3d at 374-75 (citing Restatement (Second) of Torts § 46 (1965)). Ohio courts have stringently applied the "extreme and outrageous" standard. Baab v. AMR Servs. Corp., 811 F. Supp. 1246, 1269 (N.D. Ohio 1993) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement.").

The Plaintiff points to no case law with facts similar to the present case, wherein the court found the defendants' conduct was extreme and outrageous, and

the Court has found none.  In finding that an Ohio plaintiff who asserted a claim for both sexual harassment and intentional infliction of emotional distress failed to set forth facts sufficient to establish that the employer's conduct was "extreme and outrageous", the Sixth Circuit explained the level of severity needed in order to satisfy this standard as follows:

> For a viable example of conduct which is sufficiently outrageous to be actionable under the Restatement, see Pratt v. Brown Machine Co., 855 F.2d 1225, 1238-42 (6th Cir. 1988) (intentional infliction of emotional distress under Michigan adoption of the Restatement for employer to coerce employee into silence in the face of 18 months of harassing phone calls, some threatening rape, put to the employee's wife by an upper level manager of the employer).  In Kramer v. Price, 712 F.2d 174, 175-76 (5th Cir. 1983), vacated and reh'g granted, 716 F.2d 284 (5th Cir. 1983), on reh'g, 723 F.2d 1164 (5th Cir. 1984) (per curiam) (en banc), a jilted lover of a newly-wed husband mailed the following postcard to the husband's wife shortly after she had delivered the couple's baby:

> > Baby Problem Solved!
> >
> > --with this beautiful
> >
> > ALL METAL
> >
> > CASKET-VAULT COMBINATION
> >
> > CRYPT a CRIB . . . .

> Id. at 175.  Kramer dealt with a criminal statute, not a tort, but it helps to illustrate the level to which uncivilized behavior that distresses another must rise to in order to constitute the intentional infliction of emotional distress tort.

Mullholand v. Harris Corp., 1995 U.S. App. LEXIS 37000, *19 n.1,  (6th Cir. Dec. 8, 1995).

Although Sheils's tolerating Burke's sexually explicit behavior was certainly unprofessional and undoubtedly made the Plaintiff uncomfortable, as she claims, the Court cannot make the leap to the conclusion that such conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Yeager, 6 Ohio St. 3d at 374-75. As to Sheils's alleged mistreatment of the Plaintiff, the facts speak to a situation where the boss had a personality conflict with an employee and, although he might have made some poor choices in how to handle that conflict, his conduct certainly did not rise to the level of being extreme and outrageous.

The Court, thus, concludes that the Plaintiff has not set forth sufficient evidence to demonstrate a genuine issue of material fact as to whether the Defendants' alleged conduct was "extreme and outrageous." Therefore, the Defendants' Motion for Summary Judgment (Doc. #38) is SUSTAINED, as it pertains to the Plaintiff's claim for intentional infliction of emotional distress (Count 4).

V.    Conclusion

The Defendants' Motion for Summary Judgment is SUSTAINED, in its entirety. Doc. #38. Judgment is to be entered on behalf of the Defendants and against the Plaintiff.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

March 31, 2009

       /s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Counsel of record